Edward T. McCaffrey, J.
This is an application, pursuant to CPLR 2304 to quash subpoenas issued by the respondent to each of the petitioners.
Mobilization for Youth, Inc., is a nonprofit voluntary organization to study juvenile delinquency in specific areas in the City of New York with a view to prevention and control in said field. It is not a branch, department or division of the city governmental structure. It is supported by funds provided by a number of public and private agencies. A substantial amount of money has been, and is being supplied by the City of New York. The petitioners are employed by the Mobilization for Youth, Inc., in its community organization division. The Legislature by subdivision 21 of section 20 of the General City Law has empowered the city “ To investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations ”.
Section 803 of the New York City Charter provides that the Commissioner of Investigation
“ 1. Shall make any investigation directed by the mayor or the council.
“ 2. Is authorized and empowered to make any study or investigation which in his opinion may be in the best interest of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency. ”
Shortly after the first week of August, 1964, the Mayor authorized the respondent to investigate the use of New York City funds by Mobilization for Youth, Inc., and its activities and program which might adversely affect the welfare of the city and its inhabitants. The investigation was commenced *945 and various officials and employees of Mobilization for Youth, Inc., were interrogated. The object of the investigation is to determine if city funds were properly disbursed or have been misappropriated or misused; to determine if employees of Mobilization for Youth, Inc., have instigated or advocated disregard for legally-constituted authority or attempted to indoctrinate beneficiaries of the program with a philosophy of political action alien to the form provided for by the Constitutions of the United States and the State of New York, and to enable the Mayor to take such action as is necessary to correct irregularities or improprieties, if any, and recommend improvements in the programs.
The petitioners argue that the subpoenas should be quashed as the subject of the investigation is a private organization and not the affairs or conduct of a city agency; that the petitioners were not paid by funds supplied by the city and that the investigation would expose petitioners to a charge of certain political beliefs or associations; that such is beyond the power of the respondent and prohibited by constitutional principles.
With regard to the first contention, the Mayor is duty bound annually to communicate to the Council a statement of the finances, government and affairs of the city as well as the activity of city agencies (City Charter, § 5). He may command any investigation which will provide information to discharge his responsibility and the Commissioner of Investigaton is not limited to investigations of city departments and agencies (Matter of Dairymen’s League Coop. Assn. v. Murtagh, 274 App. Div. 591, affd. 299 N. Y. 634). The Court of Appeals in Matter of Edge Ho Holding Corp. (256 N. Y. 374, 380) stated: “We have held that the Commissioner’s power to inquire is not limited to witnesses in the service of the city, and that there is no privilege of silence when reticence, if tolerated, would thwart the public good (Matter of Hirshfield v. Hanley, 228 N. Y. 346) ”.
Here, the petitioner’s employer is engaged in activities of great concern to the city and its inhabitants. Under its contracts with the city it receives substantial funds to carry out its purposes and must report receipts and expenditures to the city, and must account for and refund unexpended funds on the termination of the contract. It agreed to utilize service of personnel of the Board of Education and city agencies and such were authorized to assist Mobilization for Youth, Inc. Surely, it cannot be said that the Commissioner may not investigate to determine if city funds were being properly disbursed by Mobilization For Youth, Inc., or were misused or misappro *946 printed. To secure such information the petitioners’ employers of Mobilization for Youth, Inc., were properly subpoenaed to appear. To argue that the funds from which the petitioners were paid did not .involve funds transmitted to Mobilization for Youth, Inc., by the City of New York is specious. The City of New York through its Department of Investigation cannot be bound by the unilateral budgetary acts of the agency. The fact is that the City of New York did appropriate a substantial sum of money to the agency and earmarking of funds by the agency cannot deter a proper investigation.
With respect to the second phase of the investigation, the court is of the opininon that if personnel of Mobilization for Youth, Inc., in the performance of their activities, instigated or advocated disregard for legally-constituted authority or have indoctrinated or attempted to indoctrinate the beneficiaries of the program with an alien political doctrine detrimental to the United States and New York State, this is a proper matter for investigation as it is of vital concern to the city and its inhabitants and affects the best interests of the city.
Certainly, an investigation to determine whether employees of an organization, which is supported by public and foundation funds, and is undertaking to teach, and train youths in areas where there is a high incidence of delinquency and crime, and is working closely with educational and other agencies of government, are members of subversive organizations or are of doubtful trust and reliability is ‘ ‘ ‘ in the best interest of the city’ ” (cf. Matter of Lerner v. Casey, 2 N Y 2d 355, 366).
Surely a proper sphere of investigation is one to determine if governmental and foundation funds are being used to finance subversive activities and to take corrective measures if such is found to exist. The argument that the petitioners were not paid with city funds is without merit as already indicated. Even if such were the case, the matter is of such great concern to the city and its inhabitants, that the respondent would be entitled to have the operations disclosed. In any event, the contract with the city specifically provides in paragraph 3 that Mobilization for Youth, Inc., is the employer of its staff and is alone responsible for their compensation.
It is clear that the Commissioner of Investigation, acting-pursuant to an order of the Mayor of the City of New York, has the duty to protect the property, safety and health of all or part of the inhabitants of the city (N. Y. Const., art. IX, § 12). The Mayor of the City of New York is the executive head of the city government and it is his duty to exercise all the powers of the city (Report of the Charter Revision Commission of *947 the City of New York). When the Constitution speaks of the health of the inhabitants of the city, it does not refer only to the physical health, but moral health as well.
Accordingly, the motion is in all respects denied. Any question of privilege may be raised, or if the interrogation exceeds the ambit of the investigation, objections may be asserted at the examination.